UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

BRENDA THOMAS,

    Plaintiff,

v.                                        Case No. 3:15cv133-MCR/CJK

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

This case is before the court pursuant to 42 U.S.C. § 405(g) for review of the final determination of the Commissioner of Social Security ("Commissioner") denying Brenda Thomas's application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 1381-83.  This case has been referred to the undersigned Magistrate Judge pursuant to the authority of 28 U.S.C. § 636(b) and N.D. Fla. Loc. R. 72.2(D), relating to review of administrative determinations under the Act.  Upon review of the record before the court, I conclude the Administrative Law Judge's ("ALJ") evaluation of Ms. Thomas's complaints of migraines was inadequate.  The decision of the Commissioner, therefore, should be remanded to the ALJ for additional proceedings consistent with this report and recommendation.

## ISSUES ON REVIEW

Ms. Thomas, who will be referred to as claimant, plaintiff, or by name, raises two issues. She claims: (1) the administrative law judge ("ALJ") failed to properly consider plaintiff's complaints of migraine headaches under the Eleventh Circuit's three-part pain standard; and (2) the ALJ failed to pose a complete hypothetical to the vocational expert. (Doc. 18).

## PROCEDURAL HISTORY

On September 27, 2011, plaintiff protectively filed an application for SSI, alleging disability beginning August 26, 2011. T. 29, 80.[1] The Commissioner denied the application initially and on reconsideration. T. 79, 93. Claimant appeared before the ALJ for a hearing on July 22, 2013. T. 26. After the hearing, the ALJ found claimant was not disabled under the Act. T. 7-21. The Appeals Council denied claimant's request for further review and, as a result, the ALJ's decision became the final determination of the Commissioner. T. 1-3. The determination of the Commissioner is now before the court for review.

## FINDINGS OF THE ALJ

In his written decision, the ALJ made a number of findings relative to the issues raised in this appeal:

---

[1] The administrative record, as filed by the Commissioner, consists of seven volumes (docs. 10-2 through 10-8), and has 485 consecutively numbered pages. References to the record will be by "T.," for transcript, followed by the page number.

•   Claimant has not engaged in substantial gainful activity since September 27, 2011, the application date.  T. 12.

•   Claimant has the following severe impairments: obesity, diabetes mellitus, diabetic neuropathy, hypertension, depression, and migraine headaches.  T. 12.

•   Claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  T. 13.

•   Claimant has the residual functional capacity to perform a reduced range of light work as defined in 20 C.F.R. § 416.967(b).  She is unable to climb ladders, ropes, or scaffolds.  She can occasionally climb stairs, balance, stoop, kneel, crouch, and crawl.  She should avoid concentrated exposure to extreme cold, extreme heat, humidity, fumes, dusts, odors, and hazards.  She is limited to the simple, routine tasks of unskilled work that requires only simple work decisions and has few workplace changes.  She can do goal-oriented work, but is unable to perform work at production pace.  T. 15.

•   Claimant has no past relevant work.  T. 20.

•   Considering claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that claimant can perform.  T. 20.

• Claimant has not been under a disability, as defined in the Social Security Act, since September 27, 2011, the date the application was filed.  T. 21.

## STANDARD OF REVIEW

A federal court reviews a Social Security disability case to determine whether the Commissioner's decision is supported by substantial evidence and whether the ALJ applied the correct legal standards.  *See Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997); *see also Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991) ("[T]his Court may reverse the decision of the [Commissioner] only when convinced that it is not supported by substantial evidence or that proper legal standards were not applied.").  Substantial evidence is "'such relevant evidence as a reasonable person would accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (*quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197 (1938)).  "Substantial evidence is something 'more than a mere scintilla, but less than a preponderance.'" *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (*quoting Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987)).  Even if the evidence preponderates against the Commissioner's decision, the decision must be affirmed if supported by substantial evidence.  *See Sewell v. Bowen*, 792 F.2d 1065, 1067 (11th Cir. 1986).

When reviewing a Social Security disability case, the court "'may not decide the facts anew, re-weigh the evidence, or substitute [its] judgment for that of the

[Commissioner] . . . .'" *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990) (*quoting Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)); *see also Hunter v. Soc. Sec. Admin., Comm'r*, 808 F.3d 818 (11th Cir. 2015) ("In determining whether substantial evidence supports a decision, we give great deference to the ALJ's factfindings.") (*citing Black Diamond Coal Min. Co. v. Dir., OWCP*, 95 F.3d 1079, 1082 (11th Cir. 1996)). A reviewing court also may not look "only to those parts of the record which support the ALJ[,]" but instead "must view the entire record and take account of evidence in the record which detracts from the evidence relied on by the ALJ." *See Tieniber v. Heckler*, 720 F.2d 1251, 1253 (11th Cir. 1983). Review is deferential to a point, but the reviewing court conducts what has been referred to as "an independent review of the record." *See Flynn v. Heckler*, 768 F.2d. 1273 (11th Cir. 1985); *see also Getty ex rel. Shea v. Astrue*, No. 2:10-cv-725-FtM-29SPC, 2011 WL 4836220 (M.D. Fla. Oct. 12, 2011); *Salisbury v. Astrue*, No. 8:09-cv-2334-T-17TGW, 2011 WL 861785 (M.D. Fla. Feb. 28, 2011).[2]

The Social Security Act defines disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or

---

[2] The Eleventh Circuit not only speaks of an independent review of the administrative record, but it also reminds us that it conducts a *de novo* review of the district court's decision on whether substantial evidence supports the ALJ's decision. *See Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1260 (11th Cir. 2007); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).

Case No. 3:15cv133-MCR/CJK

can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).  To qualify as a disability, the physical or mental impairment must be so severe that the plaintiff not only is unable to do her previous work, "but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]"  *Id.* § 423(d)(2)(A).  Pursuant to 20 C.F.R. §§ 416.920(a)-(g), the Commissioner analyzes a disability claim in five steps:

    1.    If the claimant is performing substantial gainful activity, she is not disabled.

    2.    If the claimant is not performing substantial gainful activity, her impairments must be severe before she can be found disabled.

    3.    If the claimant is not performing substantial gainful activity and she has severe impairments that have lasted or are expected to last for a continuous period of at least twelve months, and if her impairments meet or medically equal the criteria of any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, the claimant is presumed disabled without further inquiry.

    4.    If the claimant's impairments do not prevent her from doing past relevant work, she is not disabled.[3]

---

[3] Claimant bears the burden of establishing a severe impairment that keeps her from performing her past work.  *See* 20 C.F.R. § 416.912; *Chester v. Bowen*, 792 F. 2d 129, 131 (11th Cir. 1986).

5.     Even if the claimant's impairments prevent her from performing her past relevant work, if other work exists in significant numbers in the national economy that accommodates the claimant's residual functional capacity and vocational factors, she is not disabled.

## FACT BACKGROUND AND MEDICAL HISTORY[4]

At the hearing before the ALJ, claimant's counsel stated that claimant "has a history of deep vein thrombosis of the right lower extremity, pulmonary embolism, hypertension, diabetes, obesity, PTSD, learning disabilities, and major depression." T. 30-31.  Counsel proffered that claimant has "frequent migraine headaches that are not able to be controlled with anti-migraine medication" and frequent urination "on a sometimes basis" due to her blood pressure medication and blood sugar levels.  T. 31.  Counsel indicated "that even though [plaintiff] might be able to do some light or sedentary work activity intermittently, the nonexertional symptoms would frequently interrupt work activity," thereby precluding her from performing "these types of . . . unskilled, low level jobs[.]"  T. 31-32.

---

[4] The recitation of the medical and historical facts of this case, as set out below, is based on the court's independent review of the record.  As this appeal concerns the ALJ's consideration of claimant's migraines, the facts section will focus on the records pertaining to that impairment.  Although intended to be thorough and to provide an overview of the claimant's history of care and treatment, the synopsis of medical evidence will be supplemented as necessary in the Analysis section.

Ms. Thomas also offered testimony at the hearing as to her health conditions and daily activities. She has an eighth-grade education and was 36 years old at the time of the hearing. T. 32. She lives with her husband in Pensacola, Florida. T. 33. She is 5'4" tall and weighs about 330 pounds. T. 36. Since 2009, she has had migraines "about twice a month." T. 36. The migraines usually last "between three to five days" and occur "maybe like a week or so" apart. T. 37. Loud noise can trigger the migraines. T. 37. Although medical records from 2012 indicate plaintiff received a prescription for amitriptyline to prevent the migraines, she stated she never started the medication. T. 37-39. She received some medication for the migraines, but could not recall the name and ran out of it before moving to Pensacola from Tampa. T. 39.

Claimant also suffers from diabetes and takes insulin injections twice a day. T. 39-40. Due to low back pain, she can stand for only about five minutes before needing to sit down. T. 42-43. She cannot sit for thirty minutes at a time because she has to get up and use the bathroom. T. 43. She uses the bathroom "maybe four or five times in the daytime" and at night she "use[s] it a lot more." T. 49.

Ms. Thomas goes to church every Sunday from around 11:00 to 1:00. T. 46-47. She also goes shopping once a month for 25 to 30 minutes; she cannot lift 10 pounds but can lift a gallon of milk. T. 45-46. During the day, claimant naps "maybe twice" for two to three hours at a time. T. 48.

Medical records also appear in the evidence before the Commissioner. On August 28, 2011, Ms. Thomas presented to the Brandon (Florida) Regional Hospital emergency room with complaints of a headache and altered sensation in her arm. T. 323. She indicated the headache was at maximum intensity and rated "10/10" two days before her visit to the hospital; at the time of the visit the headache rated "2/10." T. 323. The records described the headache as follows:

> The patient has had a mild headache (- improving. Pt states that it was at its worst yesterday. Pt states that she had a headache last month of the same intensity. Pt states she has a Hx of chronic HA, however this one is different in that it is associated with arm numbness and she has never had any other neurologic symptoms with her HA).

T. 323.

On September 27, 2011, plaintiff complained to Dr. Margie Sweeney about a four-day long migraine; it was her second migraine in September. T. 358. She reported experiencing "migraines on the right side for years" but indicated they "usually only occur once a month around [her] menses." T. 358. The headaches were "usually controlled" with Excedrin. T. 358. The doctor's review of claimant's neurological symptoms revealed: "positive for headaches, negative for dizziness, speech difficulty and weakness." T. 358. She was "alert and oriented to person, place, and time" and her coordination was normal. T. 358.

When Ms. Thomas appeared for a disability evaluation on February 14, 2012, she complained "of having migraines problems that she can not get rid of[]." T. 405.

Case No. 3:15cv133-MCR/CJK

She was experiencing a migraine at the time of the evaluation but declined an offer to reschedule, indicating "she wants it to be done." T. 405. After examining plaintiff, Dr. Bhupendra Gupta assessed: "(1) Right lower extremity pain. The range of motion is within normal limits, strength is within normal limits, and function is within normal limits; (2) adult onset diabetes on oral meds; (3) hypertension; (4) exaggerated pain behavior; (5) Claimant's Body mass index is 56.5 kg/m$^2$." T. 409.

In August 2012 Ms. Thomas reported experiencing about 8 episodes of headaches per month and indicated the pain rated a 10 of 10. T. 454. Phonophobia, photophobia, and nausea accompanied the headaches and physical activity aggravated them. T. 454. Claimant denied "any cut on her visual field." T. 454. She was unable to identify precipitating factors for the headaches other than stress. T. 454. Imitrex relieved her pain in about 2 hours. T. 454. Due to the frequency of the migraines, Dr. Noemi Rincon-Flores prescribed amitriptyline, a prophylactic medication. T. 457. Dr. Rincon-Flores also instructed Ms. Thomas to continue using Imitrex as an abortive medication. T. 457.

On March 6, 2013, claimant presented to the emergency room and reported suffering from migraines for the preceding three days. T. 484. The headaches were accompanied by nausea and sensitivity to light and noise. T. 482. She rated her discomfort as a 10 of 10. T. 484. Plaintiff stated she was out of her medication. T.

482.  She was treated with dilaudid and discharged within three hours of arrival.  T. 482.

## ANALYSIS

Ms. Thomas asserts the ALJ failed to properly evaluate her complaints of migraines under the Eleventh Circuit's three-part pain standard.  (Doc. 18, p. 5-8). "In order to establish a disability based on testimony of pain and other symptoms, the claimant must satisfy two parts of a three-part test showing: (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain." *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002) *(citing Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991)).  "If a claimant testifies as to [her] subjective complaints of disabling pain and other symptoms, as [Thomas] did here, the ALJ must clearly 'articulate explicit and adequate reasons' for discrediting the claimant's allegations of completely disabling symptoms." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (*quoting Foote v. Chater*, 67 F.3d 1553, 1561-62 (11th Cir. 1995)).  Although the Eleventh Circuit does not require an explicit finding as to a claimant's credibility, the implication must be obvious to the reviewing court. *Id.* And of course, the reasons articulated for disregarding the plaintiff's subjective

testimony must be based on substantial evidence.  *Wilson*, 284 F.3d at 1225-1226; *Jones v. Dep't of Health & Human Serv.*, 941 F.2d 1529, 1532 (11th Cir. 1991).

Here, the ALJ found Ms. Thomas's migraines were a severe impairment.  T. 12; *McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986) ("An impairment is not severe only if the abnormality is so slight and its effect so minimal that it would clearly not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience.").  The existence or severity of migraines, however, cannot be confirmed by objective testing.  *See Ortega v. Chater*, 933 F. Supp. 1071, 1075 (S.D. Fla. 1996) (noting "present-day laboratory tests cannot prove the existence of migraine headaches, as is also the case with many psychiatric and psychological impairments").  Thus, claimant's testimony and credibility are important to determining the severity her migraines and any functional limitations resulting therefrom.  The ALJ, however, never explicitly made a credibility determination.  As is discussed below, the extent to which the ALJ credited claimant's subjective complaints is not clear from the ALJ's decision.  Thus, it is not possible to review whether the ALJ-formulated residual functional capacity is supported by substantial evidence.  Accordingly, remand is warranted.[5]  *See Foote*

---

[5] In *MacGregor*, the court said:
> If the Secretary refuses to credit such testimony he must do so explicitly and give reasons for that decision.  Where he fails to do so we hold as a matter of law that he has accepted that testimony as true.

786 F.2d at 1054 (citation omitted).  Relying upon the earlier cases of *Wiggins v. Schweiker*, 679 F.2d 1387 (11th Cir. 1982) and *Boyd v. Heckler*, 704 F.2d 1207 (11th Cir. 1983), however, courts

67 F.3d at 1562 ("A lack of an explicit credibility finding becomes a ground for remand when credibility is critical to the outcome of the case.") (*citing Smallwood v. Schweiker*, 681 F.3d 1349, 1352 (11th Cir. 1982)).

The ALJ appears to have concluded the migraines were not disabling by observing "claimant has not required ongoing or frequent treatment for the migraines during the period at issue and treatment notes show that medication is usually effective." T. 17. Specifically, the ALJ noted Ms. Thomas's only visit to the emergency room occurred on March 6, 2013, when she complained of a migraine that had lasted three days.[6] T. 17, 482. The ALJ noted, however, claimant was out of medication at the time. T. 17, 482.

Although the ALJ may consider a claimant's treatment history when evaluating the credibility of her subjective complaints, the ALJ must also consider explanations for the failure to seek treatment. *See Beegle v. Soc. Sec. Admin., Comm'r*, 482 F. App'x 483, 487 (11th Cir. 2012) (citations omitted) ("When

---

in the Eleventh Circuit are now generally opting for remand in cases of inadequate credibility determinations (as well as cases involving rejection of a treating physician's opinion). *See, e.g., Lawton v. Comm'r*, 431 F. App'x 830, 835 (11th Cir. 2011); *see also Carpenter v. Astrue*, No. 8:10cv290-T-TGW, 2011 WL 767652 at *5-6 (M.D. Fla. Feb. 25, 2011) (explaining that pre-*MacGregor* Eleventh Circuit precedent held that remand was appropriate in cases involving inadequate credibility determinations).

[6] Plaintiff did visit the emergency room on August 28, 2011, and state she was suffering from a headache. T. 323. Her chief complaint, however, was that she was experiencing altered sensation in her arm. T. 323. With respect to the headache, she reported it was mild and improving. T. 323.

Case No. 3:15cv133-MCR/CJK

evaluating a claimant's statements regarding [her] symptoms and their functional effects, the ALJ may consider whether the level or frequency of treatment is consistent with the level of complaints.  Nonetheless, the ALJ may not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue medical treatment without first considering any explanations that might explain the failure to seek or pursue treatment.") (*citing* S.S.R. 96-7p at *7). Ms. Thomas argues the lack of migraine-related emergency room visits and treatment records does not provide a reasonable basis to reject her testimony because: (1) "there is no reason to seek emergency treatment" if "a person . . . has experienced migraines for years and knows the migraines last for a few hours at a time; and (2) "there is no reason to increase the number of physician visits" if "no change in [the migraines'] frequency, length, or intensity is experienced."[7]  (Doc. 18, p. 7).  The ALJ's decision did not address these potential explanations for plaintiff's failure to seek treatment.[8]  Nor did the ALJ question Ms. Thomas about the limited treatment history at the hearing.  Because the ALJ relied primarily on plaintiff's lack of "ongoing or frequent treatment" to conclude her migraines were not disabling, this case should be remanded to the ALJ for further consideration of

---

[7] Testimony at the hearing also suggested claimant occasionally had trouble affording treatment. T. 31, 48, 51.

[8] Additionally, in briefing the issue, the Commissioner did not address plaintiff's argument concerning the limited treatment history.

Case No. 3:15cv133-MCR/CJK

the migraines. *Cf. Beegle*, 482 F. App'x at 488 ("As for Beegle's argument that the ALJ improperly drew an adverse inference against him when she noted that no evidence established that he sought mental health treatment, Beegle's failure to seek mental health treatment was not the primary or significant basis for the ALJ's decision, and, as a result, any inference that the ALJ improperly drew from Beegle's failure to seek treatment did not constitute reversible error."). Although the Commissioner argues additional evidence supports the ALJ's findings, for the reasons discussed below, that evidence does not render the ALJ's failure to make a credibility determination harmless.

The ALJ also asserted that "treatment notes show that medication is usually effective." T. 17. The ALJ noted plaintiff was out of medication at the time of her March 2013 visit to the emergency room. T. 17, 482. In the September 2011 visit to Dr. Sweeney, plaintiff reported the migraines were usually controlled with Excedrin. T. 358. In August 2012 claimant indicated she had been treating the migraines with Imitrex, which usually relieved the pain in about two hours. T. 454. Thus, while some evidence supports the ALJ's assertion that Ms. Thomas's migraines are controlled with medication, other evidence suggests pain relief occurred only after several hours. Because the ALJ failed to address this discrepancy or make a credibility determination as to plaintiff's complaints of migraine-related pain, the undersigned is unable to conclude (given the peculiarities of social security

law) that substantial evidence supports the ALJ-formulated residual functional capacity. *See Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011) ("[W]hen the ALJ fails to 'state with at least some measure of clarity the grounds for his decision,' we will decline to affirm 'simply because some rationale might have supported the ALJ's conclusion.'") (*quoting Owens v. Heckler*, 748 F.2d 1511, 1516 (11th Cir. 1984)); *see also Hanna v. Astrue*, 395 F. App'x 634, 636 (11th Cir. 2010) ("The ALJ must state the grounds for his decision with clarity to enable us to conduct meaningful review.") (*citing Owens*, 748 F.2d at 1516).

The Commissioner contends the plaintiff's inconsistent statements concerning the frequency of the migraines also supports the ALJ's decision. The ALJ stated: "Although the claimant testified that the migraines occur twice a month and last for three to five days, her treatment notes contain inconsistent contemporaneous complaints." T. 17. In 2011, claimant reported to medical personnel that she generally experienced migraines only once per month. When she visited the emergency room on August 28, 2011, with complaints of a headache and altered sensation in her arm, she reported "she had a headache last month of the same intensity." T. 323. Similarly, although plaintiff told Dr. Sweeney in September 2011 that she had experienced two migraines that month, she also stated her migraines "usually only occur once a month around [her] menses." T. 358. The ALJ observed: "In contrast, treatment notes dated August 23, 2012 show that the claimant estimated

having eight episodes of headaches per month." T. 17, 454. Plaintiff explains, however, that her statement that she experienced eight "episodes" of headaches does not necessarily equate to experiencing eight days of migraines. (Doc. 18, p. 7).

Regardless, even if there are inconsistencies in the reported frequency of the migraines, the ALJ's decision does not reveal the extent to which plaintiff's subjective complaints were discredited. As the ALJ determined the migraines were a severe impairment, he gave the claimant's complaints at least some credence. In addition, all of the evidence in the record concerning the headaches suggests claimant suffers from at least one migraine per month that lasts multiple days. Nevertheless, the only portion of the residual functional capacity addressing the migraines indicates, "based on [plaintiff's] fatigue and migraine headaches, she is precluded from concentrated exposure to hazards." T. 20. What effect, if any, this vague blanket restriction would have on the frequency or intensity of claimant's migraines, however, is not clear from the record. Again, absent a discussion of Ms. Thomas's credibility, the court cannot conduct meaningful review of the ALJ's decision.

Ms. Thomas also claims that "none of the hypothetical questions" the ALJ posed to the vocational expert "accurately described reasonable limitations as a result of Plaintiff's migraine headaches." (Doc. 18, p. 9). Because this case should

be remanded to the ALJ for further consideration of claimant's credibility and complaints of migraines, this second claim of error need not be addressed.

## CONCLUSION

The ALJ failed to make a credibility determination and did not consider possible explanations for claimant's failure to seek additional treatment for her migraines. This case, therefore, should be remanded to the ALJ. Although concluding that remand is warranted, the undersigned expresses no opinion as to the merits of plaintiff's claim for benefits.

Accordingly, it is respectfully RECOMMENDED:

The Commissioner's decision should be set aside, and the matter REMANDED for further proceedings consistent with this report and recommendation.

At Pensacola, Florida, this 10th day of May, 2016.

*/s/ Charles J. Kahn, Jr.*
**CHARLES J. KAHN, JR.**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

Objections to these proposed findings and recommendations may be filed within fourteen (14) days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of objections shall be served upon the Magistrate Judge and all other parties.  A party failing to object to a Magistrate Judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions.  *See* U.S. Ct. of App. 11th Cir. Rule 3-1; 28 U.S.C. § 636.